OPINION of the Court, by
Judge Boyle.
— Smith, who was complainant in the court below, asserts his claim to the land in controversy under an entry for 20,000 acres, made the 14th of December, 1782, in the name of John Mosby. Frost is in possession of the land and claims under Blackford’s pre-emption of 1000 acres, entered the 9th of December, 1782, for which thp elder grant has issued.
The validity of Mosby’s entry has been decided by the repeated adjudications of this court, and it has not been contested that it includes, when properly surveyed, the land in controversy. Attempts, too leeble to be availing, have been made to establish, by prooí, the identity and notoriety of the objects called for by Black-ford’s entry, and it must be conceded that if the location could be fixed, the survey is entirely off its ground. Faking the case then abstractedly from all considerations other than those arising from the intrinsic merits of these respective claims, and no doubt could be entertained that Mosby must prevail, and that Smith should have a decree for the land in controversy : but Frost, *376 cot relying upon the inherent strength of Blackford's claim alone, has resorted to a train of extraneous circumstances, which it is here necfessary to investigate* and whose weight and influence in the cause must be decided. He asserts that John Craig and Robert John*, son were the locators of both Blackford’s pre-emption and Mosby’s entry of 20,000 acres, and that they were entitled to one half of each for locating, &c. ; that Mos-by’s entry was made subsequent to Blackford’s* which, among sundry others, it calls to exclude ; that the pa^ tent for Blackford’s pre-emption having emanated tb Craig and Johnson, and Frost having purchased of Blackford, John Craig, on the 19th of August, 1799, executed a bond to Frost for a conveyance of a moiety of the pre-emption, and covenanted 44 to warrant and defend it against the claim of himself and his heirs, and Robert Johnson and his heirs, and all those claiming under him that, on the 17th of August, 1798, Lewi's Craig purchased of John his part, being one fourth of Mosby’s claim of 20,000 acres, and Lewis, on his part, agreed to relinquish to John all Mosby’s right to sundry specified tracts, amongst which was Blackford’s pre-emption; that, subsequent to this period, Lewis purchased the whole entry of 20,000 acres of Mosby’s representatives, and took a conveyance therefor to Smith, the complainant, in trust for himself, after securing Smith in some demands upon him, not to a very considerable amount; that Smith had a full knowledge of all the preceding circumstances, and that the conveyance to him upon the face of it contains an exception of the right of the locators, if entitled to any part of the land. These facts constitute the prominent features of the equity set up by Frost to repel the claim, which Smith asserts, to the interposition of a court of chancery in his favor.
F. the purchaser from B, ¿hall hold the land, unin-cumbered of M’s location.
The possession of a purchaser from a joint tenant or tenant in common, ought to-be respected and prote&ed in a division as far as consists with an equal partition.
The perfon receiving a land warrant to locate is bound to obferve ordinary care and diligence in ¡oca. ting it — -an o - mission in this respect, would subject him to responsibility.
Jn deciding the queftion of responsibility, however, allowance should he made for the fiats of the country, the law under which the location was to be made, the rules of con-ftruction subsequently adop-* ted and not known or anticipated at the date of til* location.
*376 That John Craig and Robert Johnson located Black-ford’s pre-emption, is not controverted ; and that they were the locators of Mosby’s claim of 20,000 acres upon the halves, is not only inferable from intimations in various parts of the record, but is positively proven by the deposition of Johnson, taken by Smith himself. It scarcely merits an observation, that as the charge alleged by Smith to invalidate their right has not been established by proof, that it remains unimpaired.
Where locator makes defective entry, or erroneous furvey, and af-terwards takes the land by an entry for him-felf, he is responsible and ought to secure the title to his employer,— and in equity, ought not to be permitted to take the land by virtue of such subsequent entry foe himself, — L'd- / ard's heirs vsi Taylor's beirsa Pr.Dec.246-7,
Their interest in Mosby’s claim being established, the next enquiry is, ho .v far Frost can avail himself of their right in this controversy. This depends materially upon the responsibility of the locators to Frost, or Jllackford, under whom he claims. If they are responsible, Frost ought to be considered as holding a lien upon their interest in Pdosby’s claim, so far as is necessary to protect him in his possession. This remedy is the most simple, adequate and just. It affords redress for the wrong without circuity of action or expensive litigation. In determining thus, we do not decide that where one joint tenant sells a part of the joint estate, that the purchaser will, on a partition, be protected in his possession at all events; the possession of the purchaser in such case, especially a purchaser without notice of its not being an estate in severalty, would deserve consideration, and ought to be protected, if consistent with an equal partition ; but cases might be imagined where it would be inequitable.
The case before the court, in this respect, presents no difficulty. Smith seeks not for a partition of the land ; he claims the whole, not an undivided part: and of Frost’s equity, if any exists, Smith cannot pretend ignorance when he received a conveyance from Mosby.
As to the responsibility of the locators, it must be decided by the principles applicable to other transactions of a similar nature ; for though, as was justly observed at the bar, our land law is a system -mi generis, and the titles to land are to be decided by rules peculiar to that system, yet it does not follow that the conduct of men in their transactions relative to land titles are to be above the control of the ordinary rules of law and of reason.
Their conduct in this respect, as in other cases, must be tested by those immutable principles of moral equity, an exemption from the operation of which would reduce mankind to a level with the beasts that perish.
The delivery of a warrant to be located, can be considered in no other light than as a bailment, of that species called by the civilians lacatum, and in which the bailee or undertaker is denominated by them “ conductor operis faciendi.” In a contract of this sort, the undertaker is bound, by the doctrine of the common law, as well as by that of the civil law, to observe ordinary *378 care, diligence and skill in the execution of the trust; the omission of which subjects him to responsibility ; This rule being reasonable in itself, cannot be unjust when applied to test the conduct of the locator of land. In such case, however, it would unquestionably be correct, in order to determine whether ordinary care and diligence had been observed, to take into the account the state of the country, the nature of the law under which locations were to be made, and the rules of construction subsequently adopted by the courts, which,⅛ the time of making the locations, could not have been anticipated. And doubtless in these considerations will be found, in many instances, reasons for excusing from responsibility the locators of land which shall be lost. But the honest mind revolts at the idea of exonerating from all liability the locator who has been guilty of fraud or (which in law and reason amounts to the same thing) gross and palpable negligence. Where a locator makes a defective entry, or an improper survey, and afterwards takes the land by a good entry and survey of his own, no process of reasoning is necessary to carry the mind to the conclusion that he is responsible, and ought to be compelled to secure the title to his employer.
The case before the court does not differ in principle from such an one.
The locators do not own the whole claim which they have made to conflict with Blackford’s ; but they own a moiety of it. If they could make a good entry for Mosby, they might have made a good one for Black-ford ; for if the entry for Blackford was defective, and they had become better acquainted with the topography of the country when they afterwards made Mosby’s location, they could have withdrawn Blackford’s entry,, and made it good by re-entering it, and giving a more correct description of the ground intended to be covered by it. Thus relatively situated towards Blackford, mor‘e especially when we reflect that Mosby’s entry calls to exclude Blackford’s, it would be the most flagrant iniquity to permit them to recover, under Mosby’s claim, the land they had undertaken to secure to Blackford : yet such would be the consequence, if adjudged to be irresponsible. But besides the evidence of their liability, arising from the nature of the transaction itself, there are other circumstances in this case leading to the sama *379 result. Amongst the circumstances haying this tendency we may mention, as conclusive, the contract between John and Lewis Craig, in which John provides for the protection of Blackford’s pre-emption against Mosby’s claim. This may be considered as the most deliberate and solemn acknowledgment of his responsibility.
How far the deed of trust which John had before executed disabled him from entering into such a contract, (which, however decided, does not affect the contract in this point of view,) it is not necessary now to determine. We may observe, however, since the subject is mentioned, that being made for the purpose of quieting Mosby’s claim to Blackford’s pre-emption, and other lands which he had sold, it does not appear to be repugnant.to the subject of the deed of trust; and Lewis, or Smith, who holds the land for him, has not been disturbed by the trustees, and there cannot be a doubt that while Lewis holds one fourth part of Mosby’s entry under this agreement, he never can be permitted to sustain a claim inequity to Black-ford’s pre-emption against the. express stipulation of it. But whatever may be the operation of the agreement in other respects, it must be considered as unquestionable testimony of his consciousness of a responsibility to protect Blackford’s claim against Mosby’s.
As then the right of the locators to a moiety of Mos-by’s claim is proven, as their right is excepted in the conveyance from Mosby to Smith, and as their responsibility to Blackford is indisputable, it follows that Frost, who claims under Blackford, has a clear equity, as well as the law on his side j and that Smith has failed to make out a case that entitles him to the aid of a court of equity. — —Decree affirmed.